UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

QUINCY D. NOLLEY,

       Petitioner,                 **No. 11-CV-6384(MAT)**

   -vs-                          **DECISION AND ORDER**

SUPERINTENDENT OF BARE HILL,

       Respondent.
_____


## I.   Introduction

Pro se petitioner Quincy D. Nolley ("Nolley" or "Petitioner") has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the constitutionality of his detention in Respondent's custody. Nolley is incarcerated pursuant to a judgment of conviction entered against him on November 22, 1993, in Erie County Court of New York State, following a guilty plea to one count of attempted second degree murder and one count of first degree robbery, in satisfaction of a fifteen-count indictment.

## II.  Factual Background and Procedural History

### A.   The Guilty Plea and Sentencing

Nolley was indicted, along with two co-defendants, with two counts of second degree murder, attempted second degree murder, two counts of first degree assault, four counts of first degree robbery, three counts of second degree robbery, and two counts of fourth degree criminal possession of a weapon. The charges stemmed

from the robbery and murder of Michael Miskell and the beating of Lori Seifert on April 17, 1992.

On January 14, 1993, Nolley pleaded guilty to attempted second degree murder and first degree robbery, admitting that during the course of a planned robbery, he struck Seifert several times with a car jack, and gave a knife to one of his accomplices, who killed Miskell. Nolley agreed to testify against his accomplices at any future trial and to waive his right to appeal.

On November 22, 1993, the trial court (Kubiniec, J.) sentenced Nolley. Believing him to be a predicate (second) felony offender. Judge Kubiniec imposed two consecutive terms of seven and one-half to fifteen years. The judge stated, "Each sentence to be served consecutively. Consecutive sentences." S.15.

Prior to the conclusion of the hearing, the parties alerted the judge to the fact that Nolley was not a predicate felon but instead was a first felony offender. The judge then stated: "This setnence just imposed is set aside and revoked, and the Court re-sentences as follows[,]" going on to sentence Nolley to longer sentences on the two convictions, namely, seven and one-half to twenty-two and one-half. S.16-17.[1] Judge Kubiniec did not state whether the revised sentences were to be served concurrently or consecutively. S.17.

---

[1]     Numerals preceded by "S.__" refer to pages from the transcript of Petitioner's sentencing.

Also on November 22, 1993, the Erie County Clerk issued the sentence and commitment papers, which stated that the sentences for the two convictions were consecutive.

**B.    The Direct Appeal**

According to Petitioner, his trial counsel, Robert Druar, Esq. ("Attorney Druar") stipulated to discontinuing the direct appeal on August 26, 1994, stating that there were no appealable issues. (Dkt. #10).

**C.    The 1997 Motion to Set Aside the Sentence**

On January 8, 1997, Petitioner brought a <u>pro se</u> motion to set aside the sentence pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.20, contending that since the trial court, in correcting its original sentence, did not specifically reiterate that the terms were to be served consecutively, the sentences necessarily must run concurrently. <u>See</u> Respondent's Exhibit ("Resp't Ex.") B, submitted in connection with Respondent's Answer.

By the time Petitioner filed his motion, Judge Kubiniec had passed away. Judge John V. Rogowski, after reviewing the transcript of the sentencing hearing, held that Judge Kubiniec's "intent was abundantly clear." C.P.L. § 440.20 Order at 3, Resp't Ex. B. Judge Rogowski explained that Judge Kubiniec, "[h]aving already indicated that defendant should serve consecutive prison terms, . . . merely amended the length of each sentence to reflect defendant's first-time felon sentence." <u>Id.</u>  Judge Rogowski also rejected the claim

that consecutive sentences were illegal, finding that the crimes to which Nolley pled guilty were "distinguishable by 'culpable mental state, nature and manner of use, time and place of victim'" and therefore discretionary imposition of consecutive sentences was appropriate "when all of the facts and circumstances of this case [we]re assessed." C.P.L. § 440.20 Order at 4 (quotation omitted), Resp't Ex. B. The Fourth Department denied leave to appeal on September 29, 1997.

### C. Petitioner's Correspondence With Appellate Counsel Regarding Collateral Remedies

On May 31, 2002, Attorney Druar sent a letter to Petitioner, apparently in response to an inquiry from Petitioner, stating that "[r]eading the [sentencing] transcript raises at least the argument that your sentences are to run concurrently because consecutive sentencing was not specified." Letter from Attorney Druar to Petitioner dated 5/31/02, attached to Dkt. #10. Attorney Druar explained that Nolley could file a state habeas corpus petition "based upon the claim that your detention beyond seven years . . . is illegal." Id. Druar requested that Nolley send him a copy of "whatever it was [he] did file" and the resulting order. Id.

In the next correspondence from Attorney Druar that Nolley has provided the Court, Druar states that he did not think Nolley's remedy lay with an appeal of the "decision of Judge Skretny of the U.S. District Court." This Court has searched the District's

-4-

electronic filing system database and could not find any such proceeding before Judge Skretny. Indeed, the only case filed by Nolley appears to be the instant proceeding.

Attorney Druar reiterated that Nolley's best remedy was a habeas corpus such as the one that Nolley had prepared or had prepared for him on November 27, 2001, and apparently submitted to Attorney Druar to review. Attorney Druar explained that the petition raised the correct issue and raised it in the correct court. He proposed that the petition, if it had not been filed, be sent to the assigned counsel program for appointment of state habeas counsel on Nolley's behalf.

However, it appears that such a petition was never filed by Nolley or by anyone on his behalf, and Nolley apparently declined to take Attorney Druar's advice. On August 27, 2002, Attorney Druar wrote to Nolley, informing him that his habeas corpus petition should have been filed with the New York State Supreme Court. He also stated that Nolley's case could be initiated as a proceeding under Article 78 of the New York Civil Practice Law and Rules ("C.P.L.R.") if Nolley wrote to the parole board and demanded an interview because he had served more than the minimum term imposed. In the alternative, the sentencing transcript could be sent to the department of corrections requesting that the sentence be re-computed. Attorney Druar closed by saying, "I don't mean to confuse but one of these steps must be taken."

The next correspondence from Attorney Druar was dated July 14, 2004, in response to a letter from Nolley enclosing some type of legal papers. Attorney Druar asked if it had been submitted to New York State Supreme Court or Federal court. He instructed Nolley to have the papers signed before a notary and returned to him for filing, if they had not already been filed in state court. It is not clear whether Nolley ever followed the directions issued by Attorney Druar.

The final correspondence from Attorney Druar, attached by Nolley to Dkt. #10, is a letter dated July 29, 2004, to the New York State Division of Parole, asking that the circumstances of Nolley's commitment be reviewed in light of the sentencing judge's silence as to whether the sentences were concurrent or consecutive. Attorney Druar noted that under the version of P.L. § 70.25(1) then in effect, the terms accordingly were to be served concurrently, which meant that Nolley had been eligible for parole since 2001.

Evidently, no action favorable to Nolley was taken by the parole board in response to Attorney Druar's letter. There is no indication that Nolley ever filed the various applications recommended by Attorney Druar.

**D.   The 2010 Motion to Amend**

On March 5, 2010, Nolley filed a pro se "Motion to Correct Mistakes, Omis[s]ions, Defects, and Irregularities" in New York

State Supreme Court (Erie County), pursuant to C.P.L.R. § 2001.[2]
The motion court (Wolfgang, J.) denied the application on June 22,
2010. See Resp't Ex. C. Justice Wolfgang found that the claim was
"contradicted by the record" which indicated that the sentencing
court "implicitly intended, as it had stated prior to the amendment
[of the sentence] that the sentences were to be served
consecutively." C.P.L.R. § 2001 Order at 2, Resp't Ex. C.
Petitioner did not seek leave to appeal this decision.

**E.   The 2011 Federal Habeas Petition**

Nolley's habeas petition was received by the Court on August
3, 2011, and raises two grounds for relief: (1) the trial court did
not actually state, on the record, that his sentence was to be
served consecutively, and therefore, by operation of law, the
sentences must run concurrently; and (2) the imposition of
consecutive sentence was contrary to law under the facts of his
case.

From the face of the petition, it appears that Nolley is well
past the one year statute of limitations set forth in 28 U.S.C. §
2244(d)(1): He was sentenced in 1993, and he filed his petition in
2011. By Order dated August 12, 2011 ("the Timeliness Order"), the
Court (Larimer, D.J.) directed Respondent to address the timeliness

---

[2]     C.P.L.R. § 2001 extends the court's power to forgive errors "[a]t
any stage of an action, including the filing of a . . . petition to
commence an action" and specifically including mistakes "in the filing
process". Miller v. Waters, 51 A.D.3d 113, 117 (3d Dept. 2008) (quoting
N.Y. Civ. Prac. Law & R. § 2001).

of the petition in light of Earley v. Murray, 451 F.3d 71 (2d Cir. 2006), reh'g denied, 462 F.3d 147, cert. denied, 127 S. Ct. 3014, (2007); People v. Sparber, 10 N.Y.3d 457, 470 (2008); and Matter of Garner v. New York State Dept. of Corr. Servs., 10 N.Y.3d 358 (2008). However, the Timeliness Order did not specifically explain the manner in which Earley was relevant to Nolley's petition.

In Earley, the Second Circuit held that when New York State Department of Correctional Services and Community Supervision ("NYSDOCCS") administratively added a five-year term of post-release supervision to Petitioner's six-year sentence, it was contrary to clearly established due process principles as determined by the Supreme Court in United States ex rel. Hill v. Wampler, 298 U.S. 460, 461-62 (1936) (holding that the sentence imposed by the judge controls and that a sentence may not be enhanced by an amendment of an administrator). Two years after Earley, the New York State Court of Appeals confirmed that the administrative imposition of a term of post-release supervision to a sentence is improper. Sparber, 10 N.Y.3d at 469-71; accord Garner, 10 N.Y.3d at 362-63.

Nolley's first ground for relief relies on this due process principle—i.e., a sentence must be orally pronounced in open court, and that if a later written judgment adds terms or increases the sentence, the oral sentence controls. See Earley v. Murray, 451 F.3d 71, supra; see also Earley v. Murray, 462 F.3d 147, 149

(2d Cir. 2006) (confirming upon rehearing that a judicially imposed sentence includes only those elements explicitly ordered by the sentencing judge and recognizing that, although the original sentence could arguably be "unlawful" because a trial court failed to pronounce a PRS term, nonetheless the only sentence to which the defendant actually would be subject would be the term of imprisonment as articulated by the trial court).

Presumably, the issue alluded to in the Timeliness Order is whether Petitioner can take advantage of a later start-date, such as that provided in 28 U.S.C. § 2244(d)(1)(D), inasmuch as he argues that he did not know that he had been consecutively sentenced at the time Judge Kubiniec sentenced him. Alternatively, the Timeliness Order could refer to 28 U.S.C. § 2244(d)(1)(C), which applies when the petitioner is relying on a newly recognized, retroactive constitutional right.

In responding to the Timeliness Order, Respondent asserts that Nolley did not act with due diligence in discovering the factual predicate of the claim, and therefore the petition is still untimely. Respondent also contends that both claims substantively lack merit.

Petitioner submitted two replies in response to Respondent's opposition memorandum of law. See Dkt. ##9, 10. In the second reply (Dkt. #10), Petitioner also requested permission to amend his petition to include a claim of ineffective assistance of appellate

counsel for failing to file an <u>Anders</u> brief and failing to appeal the claim that his sentences were to run concurrently rather than consecutively. However, Petitioner did not address the timeliness issue. Respondent has not submitted any papers in opposition to Petitioner's request for permission to amend.

For the reasons that follow, the Court concludes that the petition is untimely, and that Nolley is not entitled to equitable tolling. Amendment of the petition is denied as moot.

## II.   Timeliness

### A.   Date of Filing of the Petition

Respondent asserts that the petition was filed on August 3, 2011, the date the Court received Nolley's petition. However, because Nolley is a <u>pro</u> <u>se</u> incarcerated litigant, the prison mailbox rule applies. <u>Noble v. Kelly</u>, 246 F.3d 93, 97-98 (2d Cir. 2001) (applying rule to state habeas petitions) (citing <u>Houston v. Lack</u>, 486 U.S. 266, 270 (1988) (applying mailbox rule to notices of appeal under Fed. R. App. P. 3(a) and 4(a)(1)). Respondent has incorrectly overlooked the prison mailbox rule.

Ordinarily, in the absence of evidence to the contrary, the Court presumes that the date the petition was signed is the date it was given to the appropriate prison authorities for mailing. <u>Torres v. Irvin</u>, 33 F. Supp.2d 257, 270 (S.D.N.Y.1998) (citing cases); <u>see also</u> <u>Marsh v. Soares</u>, 223 F.3d 1217, 1218 n.1 (10th Cir. 2000) ("Liberal application of the mailbox rule . . . causes us to treat

the petition as placed in the hands of prison authorities on the same day it was signed."). Here, Nolley's petition is undated, and it is not clear when he gave the petition to prison officials. In such cases, the date of the postmark is the date the petition is presumed filed. E.g., Alexander v. Superintendent, No. 9:07-CV-00680, 2009 WL 762108, at *2 (N.D.N.Y. Mar. 19, 2009). However, the Clerk's Office apparently did not retain the envelope containing Nolley's petition, and the Court therefore cannot ascertain the date of the postmark.

Nevertheless, a matter of days or even a month (assuming an unduly lengthy delay on the part of prison officials) will not make a difference with regard to whether the petition is timely. Assuming that it took a month for Nolley's petition to arrive at the Court-i.e., that he mailed it on December 1, 2010, it still is untimely, as discussed further below.

B.   **Timeliness**

AEDPA amended to the federal habeas statute[3] to impose a one-year limitations period on habeas petitions. See 28 U.S.C. § 2244(d)(1)(A)-(D); Bennett v. Artuz, 199 F.3d 116, 118 (2d Cir. 1999), aff'd, 531 U.S. 4 (2000). The one-year limitation period applies to a habeas claim, such as that alleged by Nolley, regarding alleged unauthorized acts by NYSDOCCS. See James v.

---

[3]

Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996).

Walsh, 308 F.3d 162, 167 (2d Cir. 2002) (holding that a state prisoner's claim that NYSDOCCS incorrectly credited his time served was properly brought under 28 U.S.C. § 2254 and, therefore, was subject to the requirements of AEDPA).

Pursuant to AEDPA, the limitation period runs from the latest of the following events:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Regardless of which of the foregoing subsections of § 2244(d)(1) is utilized, the Court finds that Nolley's petition is untimely.

### 1.    28 U.S.C. § 2244(d)(1)(A)

The petition cannot be timely under 28 U.S.C. § 2244(d)(1)(A), which calculates timeliness based upon the date the judgment of conviction became final. Petitioner filed a timely Notice of Appeal in the Appellate Division, Fourth Department, of New York State

Supreme Court, but on August 15, 1994, appellate counsel executed a stipulation of discontinuance of the appeal. By Order entered August 26, 1994, the Appellate Division dismissed the appeal.

This Court need not decide whether Petitioner's conviction became final on September 26, 1994, the deadline for him to appeal the dismissal of his direct appeal to the Court of Appeals, N.Y. CRIM. PROC. LAW § 460.10(5)(a); or on September 26, 1996, the deadline for him to seek an extension of time from the Court of Appeals to file a Notice of Appeal, N.Y. CRIM. PROC. LAW § 460.30, because both dates are prior to the enactment of AEDPA on April 24, 1996. Alamo v. Ricks, No. 01-CV-1381(NG), 2002 WL 1732815, at *1 n. 1 (E.D.N.Y. July 24, 2002) (some citations omitted). Because Nolley's conviction became final prior to AEDPA's enactment, he had a one-year grace period–until April 24, 1997–in which to file his petition. Ross v. Artuz, 150 F.3d 97, 102-02 (2d Cir. 1998).

As noted above, the Court is assuming that Petitioner filed his petition on December 1, 2011, or 13 years, 7 months, and 7 days from April 24, 1997. The petition is clearly untimely unless Nolley can avail himself of the statutory tolling provided for in 28 U.S.C. § 2244(d)(2). See Day v. McDonough, 547 U.S. 198, 206 (2006) ("The one-year clock is stopped, however, during the time the petitioner's 'properly filed' application for state postconviction relief 'is pending.'")(quoting 28 U.S.C. § 2244(d)(2). Although Nolley filed several post-conviction motions for collateral relief

in state court, they do not serve to toll the limitations period for a sufficient amount of time to render the petition timely.

Prior to the one-year grace-period's expiration, Nolley filed a motion on January 8, 1997, to set aside his sentence. In an order dated April 25, 1997, the trial court denied Petitioner's motion. Petitioner moved for a certificate to appeal from the denial of his motion, which was denied on September 29, 1997. This motion provides statutory tolling from April 24, 1997, until September 29, 1997, for a total of 158 days. See Figueroa v. Rocks, 378 F. Supp.2d 210, 219 (W.D.N.Y. 2005) ("Figueroa was entitled to seek leave to appeal the denial of his C.P.L. § 440.10 motion to the Appellate Division of New York State Supreme Court. See N.Y. CRIM. PROC. LAW § 450.15(1) (Defendant is entitled to seek certificate for leave to appeal "[a]n order denying a motion, made pursuant to section 440.10, to vacate a judgment[.]"). Thus, Figueroa is correct that the C.P.L. § 440.10 motion continued to be 'pending' until February 23, 2001 [when the Appellate Division denied leave].")(citing Bennett v. Artuz, 199 F.3d 116, 119–20 (2d Cir. 1999) (a state court post-conviction proceeding is "pending" within the meaning of § 2244(d)(2) until it is finally disposed of and further appellate review is unavailable), aff'd, 531 U.S. 4 (2000).

Nolley's next state-court collateral motion was filed on March 5, 2010, when he moved the trial court, pursuant to C.P.L.R. § 2001, to correct alleged mistakes and omissions on the Sentence and

Commitment form. In the time between the conclusion of his motion to vacate and the filing of his C.P.L.R. § 2001 motion, 12 years, 5 months, and 5 days elapsed. Even taking into account the 158 days of tolling provided by the C.P.L. § 440.20 motion, the one-year limitations period expired long before Nolley filed the C.P.L.R. § 2001 motion. A properly filed state-court motion filed *after* the end of the limitations period does not "restart" or clock. Rashid v. Khulmann, 991 F. Supp. 254, 259 (S.D.N.Y. 1998) ("The tolling provision does not, however, 'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run. Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations. Because petitioner's one year period expired in December 1987, his collateral petition filed in 1997 does not serve to revive the limitations period. . . .").

### 2.   28 U.S.C. § 2244(d)(1)(B)

Petitioner does not claim under 28 U.S.C. § 2244(d)(1)(B) that he was prevented in any way by state officials from timely filing the instant application. Therefore, § 2244(d)(1)(B) does not apply.

### 3.   28 U.S.C. § 2244(d)(1)(C)

Petitioner does not rely on any constitutional right newly-recognized, and made applicable on habeas review, by the United States Supreme Court. Instead, Petitioner relies on Earley v. Murray, 451 F.3d 71, *supra*, a Second Circuit case explaining that

a particular due process principle was clearly established by the Supreme Court's decades-old decision in ex rel. Hill v. Wampler, 298 U.S. 460, supra. In other words, the due process right asserted by Petitioner has been clearly established since the 1936 Wampler decision; he is not relying on a newly-recognized right. Accordingly, § 2244(d)(1)(C) does not apply.

### 4.   28 U.S.C. § 2244(d)(1)(D)

The most generous start date for Nolley is found in § 2244(d)(1)(D). This section applies where the date factual predicate of the claim is neither known nor reasonably discoverable at the time the petitioner's judgment of conviction became final. Even using this date, the petition is still untimely.

Under Section 2244(d)(1)(D), a court must "determine when a duly diligent person in [the petitioner's] circumstances would have discovered [the factual predicate] for his sentencing claim." Wims v. United States, 225 F.3d 186, 190 (2d Cir. 2000). The relevant question is when the facts could have been discovered through due diligence, "regardless of whether petitioner actually discovers the relevant facts at a later date." Id. at 188. Here, Nolley complains that because the trial court did not specify the manner in which the terms of imprisonment were to be served, they therefore must run concurrently by operation of P.L. § 70.25(1). According to Nolley, Wampler, as explained by the Second Circuit in Earley, makes the sentencing commitment papers a nullity because they

allegedly conflict with the judge's oral sentence. Nolley concludes that the Erie County Clerk incorrectly completed the sentence and commitment papers[4] by classifying the sentences as consecutive, and that NYSDOCCS consequently miscalculated his aggregate term of imprisonment.

With due diligence, Nolley arguably should have had knowledge of the mistake at the time the commitment papers were issued, in November 1993. It also appears that he had actual knowledge of the alleged mistake on January 8, 1997, when he filed his first motion to vacate the sentence on the basis that his aggregate sentence erroneously had been calculated by running the two terms of imprisonment consecutively.

The latest possible date for discovery of the sentencing claim's factual predicate was the date of the first letter from Attorney Druar (May 31, 2002) in the series of letters regarding Petitioner's pursuit of this claim in state court. However, the petition is still untimely. The limitations clock would have run for nearly eight years from May 31, 2002, until March 5, 2010, when Nolley filed his next properly filed state-court collateral motion so as to qualify for statutory tolling under 28 U.S.C. § 2244(d)(2). By this time, the statute of limitations had long since expired.

---

[4]     The Certificate of Conviction, dated November 22, 1993, indicates as follows: "Each sentence to run consecutive." See Exhibits to the Petition (Dkt. #1).

-17-

**C.  Equitable Tolling**

The one-year limitation period may also be tolled for equitable reasons. "To be entitled to equitable tolling, [a petitioner] must show '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)); accord, e.g., Smaldone v. Senkowski, 273 F.3d 133, 138 (2d Cir. 2001). "The term 'extraordinary' does not refer to the uniqueness of the petitioner's circumstances, but rather how severe an obstacle it is for the prisoner endeavoring to comply with AEDPA's limitations period." Bolarinwa v. Williams, 593 F.3d 226, 231-32 (2d Cir.2010) (internal quotation marks and citations omitted).

Nolley has failed to assert any basis for equitable tolling of the one-year statutory limitation period, and none is apparent on the record before the Court. Specifically, there is no indication that petitioner "diligently" pursued his rights or that any "extraordinary" circumstances prevented him from filing his petition within the one-year statutory limitation period. Thus, there is no basis to equitably toll the one-year limitation period prescribed by AEDPA. The Court notes that Nolley was advised repeatedly by his former attorney to file a state habeas petition in order to press his sentencing claim but Nolley did not do so. Such a filing likely would have provided some additional statutory tolling.

## IV.   Conclusion

For the foregoing reasons, the petition filed by Quincy Nolley (Dkt. #1) is dismissed as time-barred. Petitioner's request to amend his petition, asserted in Dkt. #10, is dismissed as moot in light of the Court's dismissal of the petition.  Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, the Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3) and FED. R. APP. P. 24(a)(3), that any appeal from this Decision and Order would not be taken in good faith and therefore the Court denies leave to appeal as a poor person. See Coppedge v. United States, 369 U.S. 438, 445-46 (1962).

Any application for leave to appeal in forma pauperis must be made to the Second Circuit Court of Appeals in accordance with FED. R. APP. P. 24(a)(1), (4), & (5). See id. Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action.

**SO ORDERED.**

S/Michael A. Telesca

_____
            MICHAEL A. TELESCA
            United States District Judge

DATED:    Rochester, New York
          June 12, 2012