UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

QUINCY D. NOLLEY,

      Petitioner,                **No. 6:11-cv-06384(MAT)**

   -vs-                           **DECISION AND ORDER**

SUPERINTENDENT OF BARE HILL,

      Respondent.

---

## INTRODUCTION

    Quincy D. Nolley ("Petitioner" or "Nolley"), an inmate in the custody of New York State Department of Corrections and Community Supervision ("DOCCS"), filed a <u>pro se</u> petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("Section 2254") that was dismissed on June 12, 2012, by this Court. Petitioner now has moved to vacate the judgment against him or, alternatively, to have his motion to vacate characterized as a new habeas petition under Section 2254.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

    Petitioner currently is incarcerated pursuant to a judgment of conviction entered against him on November 22, 1993, in Erie County Court of New York State, following a guilty plea to one count of attempted second degree murder and one count of first degree robbery, in satisfaction of a fifteen-count indictment. On November 22, 1993, the trial court (Kubiniec, J.) sentenced Nolley. Believing him to be a second felony offender, Judge Kubiniec imposed two consecutive terms of 7-1/2 to 15 years, stating that

"[e]ach sentence [is] to be served consecutively. Consecutive sentences." S.15. Prior to the conclusion of the sentencing hearing, the parties alerted the judge to the fact that Nolley was not a predicate felon but instead was a first felony offender. The judge then stated, "This sentence just imposed is set aside and revoked, and the Court re-sentences as follows[,]" and went on to sentence Nolley to longer sentences on the two convictions, namely, 7-1/2 to 22-1/2 years. S.16-17.[1] Judge Kubiniec did not state whether the revised sentences were to be served concurrently or consecutively. S.17. The Erie County Clerk issued the sentence and commitment papers later that day (November 22, 1993); these documents stated that the sentences for the two convictions were consecutive.

On January 8, 1997, Petitioner brought a pro se motion to set aside the sentence pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.20, contending that since Judge Kubiniec, in correcting its original sentence, did not specifically reiterate that the terms were to be served consecutively, the sentences necessarily must run concurrently. See Respondent's Exhibit ("Resp't Ex.") B, submitted in connection with Respondent's Answer. By the time Petitioner filed this motion, Judge Kubiniec was deceased. Erie County Court Judge John V. Rogowski heard the motion

---

[1]

    Numerals preceded by "S.___" refer to pages from the transcript of Petitioner's sentencing hearing.

and held, based on his review of the sentencing transcript, that Judge Kubiniec's "intent was abundantly clear." C.P.L. § 440.20 Order at 3, Resp't Ex. B. Judge Rogowski explained that Judge Kubiniec, "[h]aving already indicated that defendant should serve consecutive prison terms, . . . merely amended the length of each sentence to reflect defendant's first-time felon sentence." Id. Judge Rogowski also rejected the claim that consecutive sentences were illegal, finding that the crimes to which Nolley pled guilty were "distinguishable by 'culpable mental state, nature and manner of use, time and place of victim'" and therefore discretionary imposition of consecutive sentences was appropriate "when all of the facts and circumstances of this case [we]re assessed." C.P.L. § 440.20 Order at 4 (quotation omitted), Resp't Ex. B. The Appellate Division, Fourth Department, of New York State Supreme Court denied leave to appeal on September 29, 1997.

Petitioner apparently sought advice from his appellate counsel in early 2002, about challenging the state courts' rulings that his sentences were to run consecutively. On May 31, 2002, appellate counsel sent a letter to Petitioner, stating that "[r]eading the [sentencing] transcript raises at least the argument that your sentences are to run concurrently because consecutive sentencing was not specified." Letter from Attorney Druar to Petitioner dated 5/31/02, attached to Dkt #10. Attorney Druar explained that Nolley could file a state habeas corpus petition "based upon the claim

that your detention beyond seven years . . . is illegal." <u>Id.</u> Druar requested that Nolley send him a copy of "whatever it was [he] did file" and the resulting order. <u>Id.</u>

In the next correspondence from Attorney Druar that Nolley has provided to the Court, the attorney states that he did not think Nolley's remedy lay with an appeal of the "decision of Judge Skretny of the U.S. District Court."[2] He reiterated that Nolley's best remedy was a habeas corpus such as the one that Nolley had prepared or had someone prepare for him on November 27, 2001, and apparently submitted to Attorney Druar to review. Attorney Druar explained that the petition raised the correct issue and raised it in the correct court. He proposed that the petition, if it had not been filed, be sent to the assigned counsel program for appointment of state habeas counsel on Nolley's behalf.

However, it appears that such a petition was never filed by Nolley or by anyone on his behalf in state court, and Nolley apparently declined to take Attorney Druar's advice. On August 27, 2002, Attorney Druar wrote to Nolley, informing him that his habeas corpus petition should have been filed with the New York State Supreme Court. He also stated that Nolley's case could be initiated as a proceeding under Article 78 of the New York Civil Practice Law and Rules ("C.P.L.R.") if Nolley wrote to the parole board and

---

[2]

    This Court has searched the District's electronic filing system database and could not find any such proceeding before Judge Skretny. Indeed, the only case filed by Nolley appears to be the instant proceeding.

demanded an interview because he had served more than the minimum term imposed. In the alternative, the sentencing transcript could be sent to the department of corrections requesting that the sentence be re-computed. Attorney Druar closed by saying, "I don't mean to confuse but one of these steps must be taken."

The next correspondence from Attorney Druar was dated July 14, 2004, in response to a letter from Nolley enclosing some type of legal papers. Attorney Druar asked if it had been submitted to New York State Supreme Court or Federal court. He instructed Nolley to have the papers signed before a notary and returned to him for filing, if they had not already been filed in state court. It is not clear whether Nolley ever followed the directions issued by Attorney Druar.

The final correspondence from Attorney Druar, attached by Nolley to Dkt #10, is a letter dated July 29, 2004, to the New York State Division of Parole ("the Parole Division"), asking that the circumstances of Nolley's commitment be reviewed in light of the sentencing judge's silence as to whether the sentences were concurrent or consecutive. Attorney Druar noted that under the version of New York Penal Law ("P.L.") § 70.25(1) then in effect, the terms accordingly were to be served concurrently, which meant that Nolley had been eligible for parole since 2001. Evidently, the Parole Division did not take any favorable action in response to Attorney Druar's letter.

On March 5, 2010, Nolley filed a <u>pro se</u> "Motion to Correct Mistakes, Omis[s]ions, Defects, and Irregularities" in New York State Supreme Court (Erie County), pursuant to C.P.L.R. § 2001.[3] The motion court (Wolfgang, J.) denied the application on June 22, 2010. <u>See</u> Resp't Ex. C. Justice Wolfgang found that the claim was "contradicted by the record" which indicated that the sentencing court "implicitly intended, as it had stated prior to the amendment [of the sentence] that the sentences were to be served consecutively." C.P.L.R. § 2001 Order at 2, Resp't Ex. C. Petitioner did not seek leave to appeal this decision.

Nolley then instituted the instant habeas proceeding by means of a petition that was received by the Court on August 3, 2011. Nolley raised two grounds for relief: (1) the trial court did not actually state, on the record, that his sentence was to be served consecutively, and therefore, by operation of law, the sentences must run concurrently; and (2) the imposition of consecutive sentence was contrary to law under the facts of his case. This Court found that the petition was untimely under 28 U.S.C. § 2244(d)(1), and that Nolley was not entitled to have the statute of limitations equitably tolled. The Court dismissed the petition and declined to issue a certificate of appealability. Judgment was

---

[3]
      C.P.L.R. § 2001 extends the court's power to forgive errors "[a]t any stage of an action, including the filing of a . . . petition to commence an action" and specifically including mistakes "in the filing process". <u>Miller v. Waters</u>, 51 A.D.3d 113, 117 (3d Dept. 2008) (quoting N.Y. Civ. Prac. Law & R. § 2001).

entered in Respondent's favor on June 13, 2012. Petitioner did not file a notice of appeal.

On January 15, 2017, Petitioner filed a Motion for Leave to Proceed In Forma Pauperis (Dkt #14) and a Motion to Vacate (Dkt #15) the Decision and Order dismissing his habeas petition. Petitioner argues that the Court used the incorrect start date for the statute of limitations, and that his petition is timely. Alternatively, Petitioner requests that the Motion to Vacate be re-characterized as a new (not second or successive) Section 2254 petition. On February 7, 2017, Respondent filed an Affidavit in Opposition (Dkt #16) to Petitioner's Motion to Vacate. Petitioner filed a Reply Affidavit (Dkt #19) on February 18, 2017. Petitioner's motions were deemed submitted on February 22, 2017. For the reasons discussed below, the motions are denied.

## DISCUSSION

I.  **Timeliness of the Petition**

A.  **The Statute of Limitations**

AEDPA[4] amended the federal habeas statute to impose a one-year limitations period on habeas petitions. See 28 U.S.C. § 2244(d)(1)(A)-(D); Bennett v. Artuz, 199 F.3d 116, 118 (2d Cir. 1999), aff'd, 531 U.S. 4 (2000). The one-year statute of limitations applies to a habeas claim, such as that alleged by

---

[4]

    Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996).

Nolley, regarding alleged unauthorized acts by NYSDOCCS. See James v. Walsh, 308 F.3d 162, 167 (2d Cir. 2002) (holding that a state prisoner's claim that NYSDOCCS incorrectly credited his time served was properly brought under 28 U.S.C. § 2254 and, therefore, was subject to the requirements of AEDPA).

The limitations period runs from the latest of the following events:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

**B.    Timeliness Calculations**

The Court analyzed the Petition under each of subsections (A) through (D) of § 2244(d)(1), and found that regardless of the start-date utilized, events, the Petition was untimely. Because the Court has found that a typographical error affected its calculations, the Court will re-analyze the timeliness of the

petition. Petitioner does not suggest that subsections (B) or (C) apply, and therefore the Court will consider only subsections (A) and (D).

### 1.    Section 2244(d)(1)(A)

First, the Petition was not timely under 28 U.S.C. § 2244(d)(1)(A), which calculates timeliness based upon the date the judgment of conviction became final. Petitioner filed a timely Notice of Appeal in the Fourth Department, but on August 15, 1994, appellate counsel executed a stipulation of discontinuance of the appeal. By Order entered August 26, 1994, the Fourth Department dismissed the appeal. This Court need not decide whether Petitioner's conviction became final on September 26, 1994, the deadline for him to appeal the dismissal of his direct appeal to the Court of Appeals, N.Y. CRIM. PROC. LAW § 460.10(5)(a); or on September 26, 1996, the deadline for him to seek an extension of time from the Court of Appeals to file a Notice of Appeal, N.Y. CRIM. PROC. LAW § 460.30, because both dates are prior to the enactment of AEDPA on April 24, 1996. Alamo v. Ricks, No. 01-CV-1381(NG), 2002 WL 1732815, at *1 n. 1 (E.D.N.Y. July 24, 2002) (some citations omitted). Because Nolley's conviction became final prior to AEDPA's enactment, he had a one-year grace period–until April 24, 1997–in which to file his petition, Ross v.

<u>Artuz</u>, 150 F.3d 97, 102-02 (2d Cir. 1998), unless he can obtain the benefit of the statutory tolling under Section 2244(d)(2).[5]

The Petition is unsigned and undated, and it is not clear when Petitioner gave the Petition to prison officials for mailing. In such cases, the date of the postmark is the date the petition is presumed filed. <u>E.g.</u>, <u>Alexander v. Superintendent</u>, No. 9:07-CV-00680, 2009 WL 762108, at *2 (N.D.N.Y. Mar. 19, 2009). Here, the Petition was stamped "received" by the Clerk's Office on August 3, 2011, but the Clerk's Office apparently did not retain the envelope containing Nolley's petition, and the Court therefore cannot ascertain the date of the postmark.

In researching cases that have addressed similar situations, it appears that district courts have added three to five days to account for the time the unsigned pleading likely spent in the mail. Here, a matter of several days or even a month (assuming an unduly lengthy delay on the part of prison officials) will not make a difference with regard to whether the Petition is timely. Assuming that it took a month for Nolley's Petition to arrive at the Court-i.e., that he mailed it on July 3, 2011, it still is untimely, unless Nolley can avail himself of the statutory tolling provided for in 28 U.S.C. § 2244(d)(2). <u>See</u> <u>Day v. McDonough</u>, 547

---

[5]     "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending" is not counted toward AEDPA's one-year limitations period. 28 U.S.C. § 2244(d)(2); <u>see</u> <u>also</u>, <u>e.g.</u>, <u>Saunders v. Senkowski</u>, 587 F.3d 543, 548 (2d Cir. 2009).

U.S. 198, 206 (2006) ("The one-year clock is stopped, however, during the time the petitioner's 'properly filed' application for state postconviction relief 'is pending.'")(quoting 28 U.S.C. § 2244(d)(2).

Although Nolley filed several post-conviction motions for collateral relief in state court, they do not serve to toll the limitations period for a sufficient amount of time to render the Petition timely. Nolley's first post-conviction motion was filed about four months prior to the one-year grace-period's expiration on April 24, 1997: On January 8, 1997, Nolley filed a motion in the trial court to set aside his sentence under C.P.L. § 440.20. In an order dated April 25, 1997, the trial court denied the motion, and a leave to appeal was denied on September 29, 1997, by the Fourth Department. The motion to set aside the sentence thus provides statutory tolling from January 8, 1997, until September 29, 1997, for a total of 265 days. See Figueroa v. Ricks, 378 F. Supp.2d 210, 219 (W.D.N.Y. 2005) (because petitioner was entitled to seek leave to appeal the denial of his C.P.L. § 440.10 motion to vacate under C.P.L. § 450.15(1), the motion continued to be pending until the date the appellate court denied leave to appeal) (citing Bennett v. Artuz, 199 F.3d 116, 119-20 (2d Cir. 1999) (a state court post-conviction proceeding is "pending" within the meaning of § 2244(d)(2) until it is finally disposed of and further appellate review is unavailable), aff'd, 531 U.S. 4 (2000)).

Nolley did not file another post-conviction motion in state court until March 5, 2010, when he filed a motion pursuant to New York Civil Practice Law and Rules ("C.P.L.R.") § 2001 in the trial court to correct alleged mistakes and omissions on the Sentence and Commitment form. In the time between the conclusion of his motion to set aside the sentence on September 29, 1997, and the filing of his C.P.L.R. § 2001 motion, the Court has determined that 12 years, 5 months, and 5 days elapsed. Even taking into account the 265 days of tolling provided by the C.P.L. § 440.20 motion, the one-year limitations period expired long before Nolley filed the C.P.L.R. § 2001 motion in 2010. Indeed, his habeas petition was not filed until over a year later on the presumed date of July 3, 2011.

While a properly filed state-court motion can toll the one-year period, it cannot serve to "restart" or "reset" an expired limitations clock. See Rashid v. Khulmann, 991 F. Supp. 254, 259 (S.D.N.Y. 1998) ("The tolling provision does not, however, 'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run. Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations. Because petitioner's one year period expired in December 1987, his collateral petition filed in 1997 does not serve to revive the limitations period. . . ."). Petitioner's 2010 C.P.L.R. § 2001 motion was filed after the

expiration of the one-year limitations period, and cannot serve to provide any statutory tolling.

Taking into account the 265 days of statutory tolling, the Petition was filed 4,917 days after the grace-period expired on April 24, 1997. It clearly is untimely under Section 2244(d)(1)(A).

## 2.   28 U.S.C. § 2244(d)(1)(D)

Section 2244(d)(1)(D) section extends the statute of limitations, insofar as it applies where the factual predicate of the habeas claim is neither known nor reasonably discoverable at the time the petitioner's judgment of conviction became final. The Court determined that even using this date, the Petition was still untimely.

Under Section 2244(d)(1)(D), a court must "determine when a duly diligent person in [the petitioner's] circumstances would have discovered [the factual predicate] for his sentencing claim." Wims v. United States, 225 F.3d 186, 190 (2d Cir. 2000). The relevant question is when the facts could have been discovered through due diligence, "regardless of whether petitioner actually discovers the relevant facts at a later date." Id. at 188. Here, Nolley asserted in his Petition that because the trial court did not specify the manner in which the terms of imprisonment were to be served, they therefore must run concurrently by operation of P.L. § 70.25(1). According to Nolley, clearly established Supreme Court precedent, Hill v. United States ex rel. Wampler, 298 U.S. 460, 464 (1936), as

-13-

explicated by the Second Circuit in <u>Earley v. Murray</u>, 451 F.3d 71, 74 (2d Cir. 2006), requires the conclusion that the sentencing commitment papers are a nullity because they conflict with the judge's oral sentence. That is, the commitment papers provide that the sentences are to run consecutively, but Judge Kubiniec did not explicitly state that the sentences were to run consecutively. Nolley concludes that the Erie County Clerk incorrectly completed the sentence and commitment papers[6] by classifying the sentences as consecutive, and that NYSDOCCS consequently miscalculated his aggregate term of imprisonment.

With due diligence, Nolley arguably should have had knowledge of the mistake at the time the commitment papers were issued, in November of 1993. It also appears that he had actual knowledge of the alleged mistake on January 8, 1997, when he filed his first motion to vacate the sentence on the basis that NYSDOCCS had calculated his aggregate sentence erroneously by running the two terms of imprisonment consecutively. Giving Nolley the benefit of the doubt, the Court found that the latest possible date for discovery of this claim's factual predicate was the date of the first letter from Attorney Druar (May 31, 2002) in the series of letters regarding Petitioner's pursuit of this claim in state court. However, the Petition is still untimely. The limitations

---

[6]

The Certificate of Conviction, dated November 22, 1993, indicates as follows: "Each sentence to run consecutive." <u>See</u> Exhibits to the Petition (Dkt. #1).

clock would have run for nearly eight years from May 31, 2002, until March 5, 2010, when Nolley filed his next properly filed state-court post-conviction motion so as to qualify for statutory tolling under 28 U.S.C. § 2244(d)(2). By this time, the statute of limitations had long since expired.

In the Motion to Vacate, Nolley contends that the Court should have utilized April 17, 2007, the date his conditional release date passed, as the date on which the factual predicate of his sentencing claim could have been discovered through the exercise of due diligence. Using April 17, 2007, as the start-date of the one-year period, Petitioner would have had to have filed his petition by April 17, 2008, in order to be timely. However, as noted above, the Court—giving him the benefit of the doubt—has determined that his petition was filed on July 3, 2011. Moreover, he did not file a motion that could potentially allow for statutory tolling under Section 2244(d)(2) until May 10, 2010, until over three years had elapsed from his proposed start-date of April 17, 2007. The Petition is still untimely, even using the start-date urged by Petitioner.

C.   **Equitable Tolling**

"To be entitled to equitable tolling, [a petitioner] must show '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented

-15-

timely filing." <u>Pace v. DiGuglielmo</u>, 544 U.S. 408, 418 (2005). In its original Decision and Order, the Court found that

> Nolley has failed to assert any basis for equitable tolling of the one-year statutory limitation period, and none is apparent on the record before the Court. Specifically, there is no indication that petitioner "diligently" pursued his rights or that any "extraordinary" circumstances prevented him from filing his petition within the one-year statutory limitation period. . . .

In his Motion to Vacate, Nolley does not present any facts or argument in support of equitable tolling. The Court finds no basis to deviate from its original ruling that equitable tolling is not warranted.

## II.  Petitioner's Alternative Request to Re-Characterize the Motion to Vacate as a New Petition

In support of his alternative request to have his Motion to Vacate re-characterized as a new Section 2254 petition, Petitioner asserts that he suffered a constitutional injury, and became aware of that injury, upon the maximum expiration date of his sentence, October 17, 2014. Petitioner states that this constitutes "a new factual basis" for a new Section 2254 petition, which would not violate AEDPA's gatekeeping provisions against second or successive petitions, because "the sentence had yet to expire when [he] brought his earlier Petition, and continued incarceration beyond the maximum release date clearly violates State and Federal laws[.]" Motion to Vacate at 3 (citing <u>James v. Walsh</u>, 308 F.3d 162 (2d Cir. 2002); <u>McCullough v. Fischer</u>, No. 13-CV-1176S, 2014 WL

576260 (W.D.N.Y. Feb. 10, 2014)). Relying on James and McCullough, Nolley asserts that the start-date of the limitations period should be October 17, 2014, which he contends is the date the factual basis of his claim came into existence. He states that this new petition (i.e., the Motion to Vacate) would be timely because, taking into account statutory tolling,[7] less than one year elapsed between October 17, 2014, and January 17, 2017, the date he filed the Motion to Vacate in this Court.

In James, 308 F.3d at 167-68, the Second Circuit addressed the question of whether a later-filed petition which raised a claim alleging the incorrect application of credit for time served and a miscalculation of the conditional release date was a second or successive petition under § 2244(b). James previously had filed a habeas corpus petition under § 2254 challenging the imposition of his sentence, and it was denied as time barred. James then brought another § 2254 petition claiming that the New York State Department of Corrections (DOCS), DOCCS's predecessor, had erred "in its calculation and application of his sentence and that he was being held in violation of federal and state law. Specifically, James alleged that DOCS had failed to apply the credit for time served on his lesser sentence to his overall sentence, and thus miscalculated

---

[7]      Petitioner indicates that he filed a state habeas corpus proceeding on April 22, 2015, in New York State Supreme Court, Wyoming County, which ceased to be pending on December 23, 2016. See People ex rel. Nolley v. Annucci, 145 A.D.3d 1518, 2016 WL 7421240 (4th Dep't Dec. 23, 2016), aff'g Decision and Order dated June 23, 2015, Supreme Court, Wyoming County (Mohun, A.J.).

his conditional release date as April 2000 instead of April 1999." Id. at 165. The district court transferred the case to the Second Circuit for certification as a second or successive petition, but the Circuit found that it was not subject to AEDPA's gatekeeping provisions because it did not raise "a claim that was, or could have been, raised in an earlier petition." Id. at 167. To the contrary, "James could not have argued that he was in custody in violation of laws of the United States before the time when, according to his calculations, he should have been released. . . . Thus, the present claim had not arisen by 1997, when James filed his first habeas petition." Id. at 168.

McCullough then applied James to a situation where the "petitioner claim[ed], or at least appear[ed] to claim, that because the sentencing court orally imposed only a single sentence of 7-1/2 to 15 years on the two Criminal Possession of a Weapon in the Second Degree convictions but the commitment order imposed a sentence of 7-1/2 to 15 years on both counts to run consecutively, the order of commitment is a nullity and cannot be corrected at this time without running afoul of due process." McCullough v. Fischer, 2014 WL 576260, at *5. McCullough reasoned that because he had served the minimum term of his unrelated 10-to-20 year sentence by over six years, and because the order of commitment upon which he is being held by DOCCS was (according to him) a nullity, he was entitled to an unconditional discharge. Thus, McCullough argued, in 2002, when he filed the first petition, he would not have served

the minimum term of his unrelated 10-to-20-year sentence, and therefore he could not have brought this claim in that earlier petition. Id. The district court agreed that the petitioner, in 2002, could not have brought that claim regarding the execution of his sentence, and pursuant to James, his current petition was not second or successive. Id.

The Court finds that James does not compel the result that Nolley urges, and the Court respectfully declines to follow McCullough. In James, the basis of the petitioner's second petition was that DOCS had erroneously failed to correctly apply his good-time credit when calculating his conditional release date. It is axiomatic that James could not have earned credit for time served until he actually began serving his sentence. However, at the time his sentence was imposed and he filed his first petition, he had not yet earned the credit for time served that he claims was erroneously excluded. In other words, DOCS could not have erroneously failed to apply good-time credit that James had not yet earned. Though Nolley argues that his new claim is actually a challenge to the execution of his sentence by DOCCS, as opposed to the imposition of his sentence by the sentencing court, it is a distinction without a difference. The gravamen of Nolley's sentencing claim is, and has always been, the alleged discrepancy between Judge Kubiniec's orally pronounced sentence and the Erie County Court Clerk's commitment order. In short, Nolley's Motion to Vacate raises a claim that not only could have been raised, but was

-19-

raised in an earlier petition. <u>James</u>, 308 F.3d at 167. The Court therefore declines to re-characterize Nolley's Motion to Vacate as a new Section 2254 petition.

**CONCLUSION**

Petitioner's Motion to Vacate is denied in its entirety. The Court denies Petitioner's request for vacatur of the Court's judgment dismissing his 2011 Petition, further denies his request to recharacterize his Motion to Vacate as a new petition brought under 28 U.S.C. § 2254. A court may only issue a certificate of appealability "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Since Petitioner has failed to make such a showing with regard to any of his claims, the Court declines to issue a certificate of appealability in this matter.

**SO ORDERED.**

S/Michael A. Telesca

_____
HON. MICHAEL A. TELESCA
United States District Judge

DATED:      March 7, 2017
            Rochester, New York